The Overseers of the Poor of the Town of NISKAYUNA
*against* The Overseers of GUILDERLAND.

An order of two justices of A. for the removal of a pauper, di- rected the con- stable to convey and transport him to the town of W. being the place from whence he last came, and there deliver him to a constable of W. who was required also to deliver him to the next constable; and so from consta- ble to constable, until the pauper should be trans- ported to the place of his last legal settlement, if any he had, in the state. The pauper was

A RULE was granted, by the court, in *May* term, requiring the court of general sessions of the peace of *Albany* county, to show cause why a *mandamus* should not issue, commanding them to hear and adjudicate on an appeal to the said sessions from an order of removal, &c. At the last term, the court of sessions made a return, that at a court of sessions, held the 22d of *February* last, an *appeal* by the overseers of the poor of *Niskayuna*, against the overseers of *Guilderland*, from an order of removal made by two justices of *Albany* coun- ty, residing in *Guilderland*, whereby *Jacob Clute and his wife* were removed to *Niskayuna*, was heard. The or- der appealed from was dated the 2d *March*, 1810, under the hands and seals of the justices, and stated (upon the information of the overseers of the poor of the town of *Guilderland*) that *Clute* and wife had come to reside in

delivered to a constable of W. who transported and delivered him to a constable of N. The overseers of N. appealed to the general sessions from the order, who dismissed the appeal. It was held, that the *order* had no force beyond the town of W. to which the pauper was first sent; and as to every other place or purpose, was void, for uncertainty; and that N. not being bound by such an order to receive the *pauper*, had no right of appeal, having acted in their own wrong.

Where paupers are to be sent out of the state, by virtue of the 7th section of the act, (sess. 24. c. 184.) the justices in their order of removal, must designate the route by which the pauper is to be transported, and not leave it to the discretion of constables, who are mere minis- terial officers, who cannot be allowed to take the pauper where they please, in search of his place of last legal settlement.

that town, not having obtained a legal settlement there-in, nor produced any certificate of their settlement else-where, and that they were likely to become chargeable, &c. that the justices, upon due proof made thereof, and on the examination of the said *Clute* and his wife, upon oath, adjudged the facts, as stated, to be true; and that upon such examination and proof, not being able to discover where was the last place of legal settlement of the said *Clute* and wife, but that *Clute* was born, and had once been legally settled in *Niskayuna*, and that he had lived a number of years in the town of *Watervliet*, in the county of *Albany*, but whether he had gained a legal settlement in that town, they could not discover, but they had discovered, upon examination and proof upon oath, and therefore adjudged, that the said *Clute* came last from the town of *Watervliet*, and that he married his wife in the said town of *Guilderland*. And they, having been ordered, by a certain day then past, to remove to the place of their former settlement, and having neglected and refused to do so, the justices directed and command-ed the constable " to convey and transport *Clute* and his wife to the town of *Watervliet*, being the town from whence they last came, and to deliver them at the house of a constable of that town, who was also required to re-ceive them, and convey them to the next constable, and so, from constable to constable, until they should be transported to their last place of legal settlement, if such can be found in this state."

It was admitted, that *Watervliet*, to which the paupers were removed, had sent them with the order to Niskayuna.

A preliminary objection was made by the respondents before the court of sessions, that, as the order did not remove the paupers to *Niskayuna*, nor make any adjudi-cation, that that town was the last place of their legal settlement, the overseers of *Watervliet* only, and not those of *Niskayuna*, could sustain an *appeal* from the

NEW-YORK,
October, 1811.

Overseers of
NISKAYUNA
v
Overseers of
GUILDER-
LAND.

NEW-YORK,
October, 1811.

Overseers of
NISKAYUNA
v.
Overseers of
GUILDER-
LAND.

order, if any could be sustained. Upon hearing the counsel on both sides, the court of sessions determined, that the preliminary objection was well taken, and, therefore, dismissed the appeal.

*Parker*, after reading the return, contended, that sufficient cause was shown against granting a *mandamus*. It appeared, he said, that the sessions had adjudicated. If the sessions had a right to decide, and had decided wrong, a *mandamus* was not the proper remedy; but the proceedings should be brought to this court, by *certiorari*.* The superior courts will not, in the summary way of a *mandamus*, look into the proceedings of an inferior court.† If the merits of the order and adjudication are to be inquired into, it should be when the whole proceedings are brought up by *certiorari*.

* 1 Johns. Rep.
54. 330. 2 Johns.
Rep.   105.   3
Johns. Rep. 23.
6 Johns. Rep.
92.
† 1 Burr. Sett.
Cas. No. 263. p.
944.

[He was stopped by the court, who desired to hear the other side.]

‡ 3 Bl. Com.
110.

*I. B. Yates*, contra. The court of sessions made no adjudication. They did not hear or decide on the appeal, but dismissed it, on a preliminary objection, as to the right of appeal. A *mandamus*, therefore, is the proper remedy. It is a command from the higher court to an inferior court, directing them to do some particular thing which they ought to do.‡ In all the cases cited from the reports of the decisions of this court, the court below had heard and decided on the merits. The principle of the *English* decisions§ is perfectly analogous.

§ 2 Burr. Sett.
Cases, 32. 844. 5
Term Rep. 477.

*Parker* said, that the cases cited were those in which the court refused to hear an appeal. Here the sessions decided, that this was not a proper case for an appeal. It was a *travelling* order, but if there was a right of an appeal from this order, it belonged to *Watervliet*, not *Niskayuna*. But, admitting that this court will now enter

into the merits of the case, on this motion, he contended, that no appeal would lie from such an order. It is not an order of settlement. It adjudges no place to be chargeable with the support of the paupers. The only adjudication is, that they came last from *Watervliet*, and it orders them to be removed there. It is a *pass warrant*, issued pursuant to the directions of the 7th section of the act for the settlement and relief of the poor. (sess. 24. c. 184.) The order does not adjudge that the last place of legal settlement was at *Niskayuna;* but merely states, that *Clute* was born, and *once* settled there. It is not an order of settlement, as to *Niskayuna*, unless there is an express adjudication, that that was the last place of his legal settlement. It is what, in *England*, is called a *vagrant pass*, from which no appeal lies.* To allow appeals from such *passes* or orders, would produce manifold inconvenience and vexation. There might be a hundred appeals from one order of removal. If *Niskayuna* has the right of appeal, every other town through which the pauper may be passed, would have the same right. If any appeal lies, it belongs to *Watervliet*, the town to which the paupers were ordered to be removed, by the overseers of *Guilderland*.

Again, the statute gives the right of appeal to the party *aggrieved*. Now *Niskayuna* could not be aggrieved by an order of *Guilderland* to remove a pauper to *Watervliet*. If *Watervliet* sent the paupers to *Niskayuna*, *Guilderland* is not responsible. If the overseers of *Guilderland* can be made answerable in this case, they would be equally so to all the different towns through which the pauper might have been sent to the remotest bounds of the state.

*I. B. Yates.* It is true, that in *England* the general rule is, that an *appeal* will not lie from a *vagrant pass;* but the *English* statutes relative to the establishment of the poor, will, on a comparison, be found, in many of the provisions, essentially different from our act. The 17th sec-

NEW-YORK, October, 1811.

Overseers of
NISKAYUNA
v.
Overseers of
GUILDER-
LAND.

* *Burr. Sett. Cases, No. 72. 74. 263. Cald. Cases, 18.*

NEW-YORK,
October, 1811.

Overseers of
NISKAYUNA
v.
Overseers of
GUILDER-
LA' D.

tion of our act gives the right of appeal to "every per-son who shall think himself aggrieved by any judgment or order of any justice or justices of the peace, or by warrant of removal of any poor person" By the act, passed *March* 30, 1810, (sess. 33. c. 109. s. 4.) on hearing of appeals, under the act relative to the settle-ment of paupers, the courts of general sessions are re-quired to begin *de novo*.

No construction can be given to the act relative to the settlement of the poor, as to orders for a direct removal, which does not equally apply to orders for an indirect re-moval, or pass warrants. The statute makes no distinction between them, in regard to the right of appeal. Even in *England*,\* there are cases of appeals from *vagrant passes*.

\* *Burr.Sett.Cas.* 105. 204. *No.* 72, 74. *Ib.* 18. 844.

Though the court do not directly decide the point, in the case of *The Overseers of Shawangunk* v. *The Over-seers of Mamakating*,† yet it may be fairly inferred from the case, that it was their opinion that an appeal would lie from an order of removal ; for the counsel made the distinction between the two kinds of orders, and the court decided on the merits of the case. So in the case of *The Overseers of Newburgh* v. *The Overseers of Plattekill*,‡ the counsel raised the objection that no appeal would lie from such an order ; and the court decided on the merits, without taking notice of the objection as to the right of appeal, which they would not have done, had they sup-posed the objection well founded.

† 1 *Johns. Rep.* 54.

‡ 1 *Johns. Rep.* 380.

Then has any other town, except that to which the pauper is first sent, if aggrieved, the right of appeal? There is no adjudication as to this point ; and it must rest on a fair construction of the act. By the 7th section, the legislature had in view the removal of paupers who had no place of legal settlement in the state, and intended that the towns through which the pauper was to pass should be designated in the warrant. It could not be the intention of the legislature that the constable should take the pauper to any town he pleased.

The terms of the act, in regard to appeals, are broad. They are allowed to every person, or town, having a reasonable cause of complaint.

NEW-YORK,
October, 1811.

Overseers of
NISKAYUNA
v.
Overseers of
GUILDER-
LAND.

*Per Curiam.* The Overseers of *N.* show no merits to entitle them to the present motion. The order of the justices contained an adjudication, that the paupers last came from the town of *W.* and it ordered the constable to convey them thither, and there the order had spent itself. It did not designate any other place to which the paupers were to be removed, either within or without the state; and it would be equally absurd and oppressive, to suppose that it had any ulterior force, when it left every thing at large to constables, without any certainty, or order, or adjudication, as to place or object. The order, as to every thing that was to be done after the paupers had been removed to *W.* was void, for uncertainty. Constables are mere ministerial officers. They cannot be roaming over the state with paupers, seeking for some place of settlement. If the pauper is to be sent out of the state, the order of the justices must, at least, prescribe the route. It ought not to be left to the discretion of constable upon constable. This would be repugnant to good order, to the humanity due to the unfortunate pauper, and to the spirit of the act which declares that the stranger shall be conveyed from constable to constable, "or otherwise as such justices shall direct." The justices must, therefore, make a special *direction* in the case, and here was none made. The town of *N.* was, therefore, not bound to receive the paupers, without a new order, and if that town did receive them, it was not by the authority of the order, but in their own wrong. The sessions were, therefore, correct, in deciding that the Overseers of *N.* had no right to appeal from the order.

Motion denied.